HUGHES FARMS, INC., A CORPORATION, APPELLEE, v. TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC., A CORPORATION, APPELLANT.

157 N. W. 2d 384

Filed March 22, 1968.   No. 36723.

Frederick E. Wanek, for appellant.

William S. Padley, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

McCOWN, J.

Tri-State Generation and Transmission Association, Inc., a wholesale electrical cooperative, commenced condemnation proceedings against Hughes Farms, Inc., to acquire a perpetual easement for power line purposes. The easement was 100 feet in width and extended approximately 3,942 feet diagonally across the south half of Section 30, Township 8 North, Range 40 West of the 6th P.M., Chase County, Nebraska. As constructed, there are five two-pole structures supporting the 115 kilovolt transmission line on the property involved. The appraisers appointed by the county court returned an award of $9,500. Both the condemner and the condemnee appealed to the district court. The jury returned a verdict of $12,538.40. Tri-State has appealed.

The basic contention is that the amount of the award was excessive, and that the measure of damages and evidence of damage were improper. There was testimony that the condemnee, acting in good faith, had planted approximately 190 acres of corn, a small portion of which was on the easement, and that the acreage was irrigated land. Due to the construction of the transmission line, it was unable to irrigate the entire tract at a critical period of time and as a result, the 190 acres produced 50 bushels per acre less than similar irrigated land nearby. There was also testimony that because of the transmission line, it would be impossible to effectively use a particular sprinkler known as the Valley sprinkler for certain portions of the land off the easement which were not suitable for gravity irrigation, and that wells were improperly located for practical and effective irrigation use after construction of the transmission line.

There was a wide disparity in testimony as to the difference in value of the land before and after the taking.

The appellant's two witnesses placed the damages at $2,500 and $3,000 respectively. The appellee's witnesses placed the damages at amounts varying from $25,000 to $44,500.

The appellant contends that consideration of damages must be limited to that portion of the land whereon use has in fact been restricted and relies upon Wahlgren v. Loup River Public Power Dist., 139 Neb. 489, 297 N. W. 833, and, in particular, the following language of that case: "In this case no property was actually appropriated for exclusive use by appellant except the areas upon which the structures were erected. Under these circumstances the only thing to be considered is damage to the land resulting from a restriction of the use. It necessarily follows that consideration must be limited to that portion of the farm whereon use has in fact been restricted."

The proper measure of damages for land taken for public use is the fair and reasonable market value of the land actually appropriated, and the difference in the fair and reasonable market value of the remainder of the land before and after the taking. See, Pieper v. City of Scottsbluff, 176 Neb. 561, 126 N. W. 2d 865; Sump v. Omaha Public Power Dist., 168 Neb. 120, 95 N. W. 2d 209.

Article I, section 21, of the Nebraska Constitution, provides: "The property of no person shall be taken or damaged for public use without just compensation therefor."

Wahlgren v. Loup River Public Power Dist., *supra*, was not intended to limit consideration or recovery of damages to the portion of the land actually within the boundaries of an electric transmission line easement.

The appellant also contends that because one witness for the appellee placed a separate value upon the crop damage and other witnesses for the appellee indicated that their testimony as to damages did not take into account crop damage during construction, an improper measure of damages was presented to the jury. The ap-

pellant is confusing the legal measure of damages and the admissibility of testimony as to damages. It is almost universally recognized that the value of crops growing on the land and injured or destroyed by the taking are properly considered in determining the value of the land. See, 29A C. J. S., Eminent Domain, § 173, p. 732; IV Nichols, Eminent Domain, § 13.21, p. 404 et seq.; 27 Am. Jur. 2d, Eminent Domain, § 279, p. 69.

Where there is competent evidence of damage to unmatured crops, it may be included in the overall damages for which the condemnee is entitled to judgment. See, State v. Dillon, 175 Neb. 350, 121 N. W. 2d 798; Snyder v. Platte Valley Public Power & Irr. Dist., 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154.

Here witnesses for both appellant and appellee testified as to specific dollar amounts of crop damage, but the testimony quite clearly reflects the relationship of the crop damage to the overall damage. The trial court quite properly instructed the jury that the measure of damages was the difference between the fair and reasonable market value of the land immediately before and immediately after the taking, and that in determining the damages, it could take into consideration any damages that were done to the growing crops on the land during the time of the construction of the line if any were proven by the preponderance of the evidence. Under such circumstances, it is clear that the jury was not mislead in any fashion. The line had been constructed prior to the trial in district court, and the jury had viewed the premises. "Damages in a condemnation action are peculiarly of a local nature, and weight and credibility of valuation testimony are for the jury." Frank v. State, 176 Neb. 759, 127 N. W. 2d 300.

In this case, the application for condemnation alleged: "That the easement requested includes the right to enter upon, construct and maintain such transmission lines, and all incidents thereto, and the right to remove trees whenever necessary to avoid interference with said line;

that your applicant does not desire the fee title, but a 100 foot easement, and the owners and the lessees retain the use of the land under said line and between said structures and the applicant obligates itself to pay all future crop damages incident to the construction maintenance and reconstruction of said line when and if such damages occur."

At the commencement of the trial, the attorney for the appellee made the statement out of the hearing of the jury: "Let the record show that the plaintiff, Hughes Farms, Incorporated, herewith accepts the proposal of the Tri-State Generation and Transmission Association, Inc., as set forth in its original application wherein said association reserves for future determination all future crop damages after the time of construction, and said plaintiff tries this case on the question of damages for the taking and the damage incident to construction."

At that time appellant's attorney responded: "To which the defendant objects on the basis of the holding pronounced in Little v. Loup River Public Power District, 150 Neb. 864, 36 N. W. 2d 261, 7 A L R 2d 355."

Some time later, after the testimony of three witnesses had been completed, the statement of appellee's attorney accepting the proposal as above quoted was read to the jury by the court reporter, and appellant's counsel objected upon the ground that it was an improper statement of the law, and a matter to be covered by the court's instructions. This was overruled, and a motion for mistrial was also overruled.

The appellant introduced evidence to establish the method and manner of making inspections and evidence indicating the nature and extent of use which would be available to the appellee, and the expected lifetime of the present transmission line. The jury was specifically instructed that the proposal to pay for the crop damage if, as, and when it occurred had been accepted by the appellee and was also specifically instructed that the appellant would be liable for future crop damage and

that it was not permitted to consider or speculate about any damages that might be done to crops in the future in arriving at its verdict in the case.

The appellant contends that Little v. Loup River Public Power Dist., 150 Neb. 864, 36 N. W. 2d 261, 7 A. L. R. 2d 355, holds that a proposal to pay future crop damage in an application for condemnation is ineffective under all circumstances, cannot change the measure of damages, and that the landowner is required to recover all of his damages, including future crop damages, at the time of the condemnation. We cannot agree. We think it clear that the holding in the Little case was that an unaccepted proposal or promise to do something in the future cannot affect the character or the extent of the right acquired or the amount of the damages to be recovered as just compensation. It clearly held that an unaccepted promissory stipulation could not deny a landowner the right to recover the damages guaranteed by the Constitution and that such an unaccepted proposal could not be read in evidence to the jury nor considered in the court's instructions. We do not believe the court intended to imply that a proposal in an application for condemnation to defer future damages to crops, not yet accrued, could not be voluntarily accepted by the landowner. Neither do we believe the condemner should be permitted to make such proposals in the application for condemnation, have them accepted, and the jury instructed and the trial conducted on that basis, and then assert that all damages present and future are included in the judgment, and the measure of damages has been incorrectly given to the jury.

Although neither party has cited any case other than the Little case, certain principles here involved are summarized in an exhaustive annotation in 7 A. L. R. 2d 364. At page 392, it is stated: "The courts have frequently pointed out the difference in legal effect between mere promissory statements, stipulations, and declarations on the one hand, and (1) reservations of property

rights in the landowner; (2) valid and contractual, hence binding, stipulations; and (3) limited condemnation, properly effected at the proper time. If a particular case involves one of these three matters rather than a promissory matter, the binding stipulation, or the reservation of rights, easements, etc., to the property owner, or the limited condemnation, is properly to be considered in determining the landowner's damages or compensation." See, also, decisions cited in the above annotation in § 6, p. 392, § 7, p. 405; United States v. 213.43 Acres of Land, More or Less, in Foster, Stutsman, Benson & Towner Counties, North Dakota, 108 F. Supp., 446.

It would seem clear that the situation here involves a reservation of property rights in the landowner, binding stipulations to that effect, and a condemnation limited to exclude a damaging of future crops. Where the condemner alleges in its application for a perpetual easement for an electric transmission line its intention that the landowners retain the use of the land under said line and between said structures, and the applicant obligates itself to pay all future crop damages incident to the construction, maintenance, and reconstruction of said line when and if such damages occur; and such proposal is accepted by the condemnee, and the case is presented to the jury on that basis and the jury instructed to disregard all future crop damage, the judgment should contain a provision that the easement acquired is subject to the obligation of the condemner to pay such future crop damages when and if such damages occur. In this case, however, the appellee has filed no cross-appeal nor made any objection to the form or nature of the judgment and, therefore, the judgment should be affirmed as to damages.

The appellant also contends that attorney's fees allowed by the trial court were excessive. Section 76-720, R. R. S. 1943, provides that on appeal to the district court in the situation presented here, "the court may in its discretion award to the condemnee a reasonable sum for

the fees of his attorney." The record is not clear as to the basis upon which attorney's fees were determined. An undisclosed portion of the total time was involved in preparation and presentation of the cause before the board of appraisers. The actual time of trial involved in the district court was 2 days. We believe that all of the elements entering into the determination of the amount of a reasonable fee as set out in Canon 12 of the Canons of Professional Ethics of the American Bar Association should properly be considered. Under the circumstances here, we determine a reasonable fee for the appellee's attorney in the district court to be the sum of $1,500.

For the reasons discussed, the judgment of the district court is modified by awarding to the appellee as fees for its attorney, the sum of $1,500 for services in the district court, and as so modified is affirmed. The sum of $750 is allowed as attorney's fees to the appellee in this court.

AFFIRMED AS MODIFIED.