[Civ. No. 69675. Second Dist., Div. Four. Jan. 31, 1984.]

NANCY C. VELLA, Plaintiff and Appellant, v.
EVERETT R. HUDGINS, Defendant and Appellant.

516

---

**COUNSEL**

Joseph L. Shalant and Frances T. Shalant for Plaintiff and Appellant.

Milton Zerin and David H. Baum for Defendant and Appellant.

## OPINION

**WOODS, P. J.**—The within litigation has been pending in the trial court, Court of Appeal, or Supreme Court since 1969. After three appellate reversals, we now affirm the ruling of the trial court, with the wistful hope that the dispute between these parties will finally be put to rest.

We recite the underlying facts by quoting from the unanimous opinion of the California Supreme Court issued in 1977:[1]

"The trial court found that Vella, who originally owned the subject property, had for several years maintained a confidential and intimate relationship with defendant. Vella encountered financial difficulty and the property became subject to multiple encumbrances, including a second deed of trust then held by the Penrod Corporation. In May of 1969, Hudgins purchased the note and the second trust deed securing it, informing Vella that he had acquired the note to protect her from default, and assuring her that she need not worry about making payments on the obligation. Relying upon that promise and the confidential nature of their relationship, Vella ceased paying on the note, and used her resources to discharge other debts. Thereafter, the parties quarreled, and Hudgins directed the trustee named in the second deed of trust to give appropriate notice of default and election to sell. The trustee complied and Hudgins subsequently purchased the property at the trustee's sale in September of 1969. The record indicates the property at that time had a fair market value in excess of $40,000.

"Vella immediately filed the present suit, framed as an action for injunctive relief and for imposition of a constructive trust. Meanwhile, Hudgins served Vella with a three-day notice to quit the premises and thereafter promptly initiated unlawful detainer proceedings under Code of Civil Procedure section 1161a. (All statutory references are to the code, unless otherwise specified.) In the unlawful detainer action Vella asserted as an affirmative defense the same allegations of fraud that form the basis for the present equity action which was then pending. Judgment in the unlawful detainer suit was given for Hudgins and Vella was evicted. That judgment is now final.

"Hudgins unsuccessfully urged the unlawful detainer judgment as a bar to the present action. His motion to strike the complaint was denied, and

---

[1]*Vella* v. *Hudgins* (1977) 20 Cal.3d 251, 253-254 [142 Cal.Rptr. 414, 572 P.2d 28].

the cause proceeded to trial on the merits. After a four-day trial, the court, on the basis of detailed findings of fact, concluded that Vella's default had been induced by Hudgins' fraud and ordered the property returned to Vella.''

In 1978, we ordered a partial retrial[2] of the matter, on the issue of plaintiff Vella's right to an accounting, attorney's fees and costs. Following that retrial, plaintiff was awarded damages, but denied attorney's fees. We subsequently reversed the order denying attorney's fees,[3] holding that the statutory right to such fees under Civil Code section 1717 was applicable because the note secured by the second trust deed contained an attorney's fee clause. The instant appeal is taken from the trial court's order granting to plaintiff attorney's fees in the sum of $50,000.

Defendant contends that the trial court was limited in its award of fees by the terms of a contingency fee contract entered into between plaintiff and her attorney. Under that contract, as interpreted by defendant, the court could have awarded to plaintiff no more than $3,948.26. Plaintiff has filed a cross-appeal, contending that the award of fees was inadequate.

Plaintiff and her attorney, Joseph Shalant, entered into a contingent fee contract at the time Shalant was retained by plaintiff. That contract provided that Shalant was to receive one-third of all monies recovered by plaintiff. Following the first appeal, plaintiff and her attorney renegotiated the contract, providing for a contingency fee of 40 percent of all monies recovered.

At issue in this appeal is whether the trial court was bound by the terms of the contingency contract between plaintiff and her attorney. Interestingly, both parties argue that the trial court erred in refusing to award fees pursuant to the contract terms. The parties' dispute centers not on the resolution of the legal issue, but on a factual one: what are the terms of the contract? We first resolve the factual issue.

I

Defendant cites the following language from the parties' agreement: "We are herewith revising our previous retainer agreement to call for a 40 percent contingency fee of all moneys recovered from either Hudgins, Pistone, or any other responsible parties.'' Defendant argues that inasmuch as the "moneys" recovered by plaintiff total only $9,870.66, Shalant was entitled to 40 percent of that amount and nothing more.

---

[2]*Vella* v. *Hudgins* (2 Civ. 49334).
[3]*Vella* v. *Hudgins* (2 Civ. 61919).

Plaintiff refers us to a declaration which she filed in support of her cost bill. In that declaration she explains that, "[t]hough the agreement may have referred to 'monies,' we both understood this to mean *everything* that we won because of this case. As a result of this agreement, I grant deeded 40% of my house to Mr. Shalant once possession and title were restored to me. I am also bound by our retainer contract to pay 40% of whatever else is obtained in this matter." Plaintiff argues that under the terms of that contract 40 percent of everything recovered for plaintiff (including her home) would compel a fee in the sum of $100,969.

It is axiomatic that the parties to an agreement may modify it. The precise meaning of terms used in a contract is that which is understood by the parties to the contract. The court will not impose its own interpretation at variance with the parties' intention. Here, there is no dispute between plaintiff and her attorney concerning what they both intended when the contract was written. ■ A contingency fee contract may be modified by the parties át any time during the subject litigation. (*Merced Irrigation Dist.* v. *Woolstenhulme* (1971) 4 Cal.3d 478, 505 [483 P.2d 1].) Therefore, the evidence reflects that the contract between plaintiff and her attorney created an obligation on the part of the client to pay to the attorney 40 percent of the value of all property recovered as a result of the instant litigation.

## II

With respect to the legal issue, we are in the novel position of rejecting the contentions of both parties. ■ Although the contingency fee contract was in existence between plaintiff and her attorney, and was in evidence, the court was not bound by it in determining an award of reasonable attorney's fees for successful litigation. We do accept defendant's initial premise, that the award of fees in this case was an item of costs and, thus, limited to those costs reasonably and necessarily incurred by the prevailing party. Civil Code section 1717, which is the basis for the fee award in this case, provides in part: "Reasonable attorney's fees shall be fixed by the court, . . . and shall be an element of the costs of suit." In support of defendant's position is *City of Los Angeles* v. *Knapp* (1936) 7 Cal.2d 168, 173-174 [60 P.2d 127], where the court concluded: "Where the court is authorized by statute to allow attorneys' fees in certain actions or proceedings, such allowance must be made to the party to the action for fees paid or incurred by him, and not directly to the attorney, who is not a party to the action. (*Keck* v. *Keck,* 219 Cal. 316 . . .; *Stevens* v. *Stevens,* 215 Cal. 702 . . .; *Chavez* v. *Scully,* 62 Cal.App. 6 . . . .) [¶] . . . Defendants' attorneys' fees are expressly mentioned in section 1255a of the Code of Civil Procedure, as an item to be included in the award of costs. The allowance of attorneys' fees is made to reimburse the defendant for fees which

he has paid, or to indemnify him for fees which he has not paid, but has incurred. (*City of Long Beach* v. *O'Donnell,* 91 Cal.App. 760 . . . .)"[4] However, our concurrence with defendant on this point avails him nothing, since we have already concluded that plaintiff had incurred a liability for attorney's fees far in excess of the $50,000 award.

Our research has disclosed no cases resolving the precise issue presented here: whether a trial court must award fees pursuant to the terms of a contract between the prevailing party and his or her attorney. We believe that the trend of the cases, however, is toward the conclusion that a trial court may consider the terms of the parties' contract, along with other factors, but that the terms of the contract do not compel any particular award.

Early California cases indicated that such contingency agreements were immaterial in determining an award of fees and should not be considered by the court. (*Estate of Duffill* (1922) 188 Cal. 536, 552 [206 P. 42].)

In 1963, the Court of Appeal in *Franklin-McKinley Sch. Dist.* v. *Lester* (1963) 223 Cal.App.2d 347 [35 Cal.Rptr. 727], addressed an issue similar to that raised by defendant here. In a condemnation action, a contingent fee contract between the defendant and his attorney provided for fees in the event the property was condemned. The condemner abandoned the proceeding, and defendant sought an award of attorney's fees. The court observed that attorney's fees were an item of costs, to reimburse defendant for fees paid or to indemnify him for fees for which he was liable. The court concluded: "'Therefore, where the agreement between the defendant and his attorney is for a contingent fee and the contingency has not occurred, a claim for counsel fees is not justified despite the fact that the agreement did not specifically consider the possibility that there might be an abandonment of the condemnation suit.'" (*Id.,* at p. 349, quoting 17 Cal.Jur.2d at pp. 780-781.)

Subsequently, the California Supreme Court addressed a similar issue. In *Merced Irrigation Dist.* v. *Woolstenhulme, supra,* 4 Cal.3d 478, following a partial abandonment of an eminent domain proceeding, the court awarded $3,500 attorney's fees to defendant's attorney. The award was challenged on appeal, on the basis that a contingent fee contract with the attorney prohibited an award of fees. The Supreme Court did not address the issue,

---

[4]We recognize that in some instances attorney's fees have been awarded to a party who had no obligation to pay fees at all to his attorney. (See, e.g., *Serrano* v. *Priest* (1977) 20 Cal.3d 25, 47 [141 Cal.Rptr. 315, 569 P.2d 1303], and *Trout* v. *Carleson* (1974) 37 Cal.App.3d 337, 343 [112 Cal.Rptr. 282].) In those cases, fees were awarded to public interest law firms under the court's equitable jurisdiction pursuant to special statutes or under a private Attorney General theory.

since the parties had modified their contract to provide for "reasonable fees" in the event condemnation proceedings were abandoned. Under those circumstances, the contingency contract was not material, and therefore the court was not required to decide whether it should have been binding on the trial court.

The only other California case we have discovered which discusses this issue is *County of Madera* v. *Forrester* (1981) 115 Cal.App.3d 57 [170 Cal.Rptr. 896]. There, on similar facts, the trial court awarded "reasonable attorney fees," not taking into consideration the contingency fee contract between the defendant and his attorney. The court concluded: "We find no abuse of discretion in this award. There was no need for the court to consider the contingency agreement. There were no provisions in that agreement with respect to fees upon an abandonment. The contingency set forth in the fee agreement never occurred. Even if it be error to not at least consider the contingent fee agreement in determining the amount of attorney fees, it was harmless error here (Cal. Const., art. VI, § 13)." (*Id.*, at p. 65; fn. omitted.)

Although it is clear that California decisions have thus far managed to avoid, rather than resolve, this issue, the Nebraska court in *Prucka* v. *Papio Natural Resources Dist.* (1980) 206 Neb. 234 [292 N.W.2d 293], did reach it. Under circumstances similar to ours the court concluded: "[T]he court, in awarding a reasonable fee, may . . . consider the fact that the litigant is obligated to pay a contingent fee, particularly if such a contract is customary in the locality. While that factor is neither the sole factor nor a factor to be given any greater weight than any other, it may, nevertheless, be considered. Likewise, the court may consider any other fee agreement entered into by the parties." (*Id.*, at p. 296.) We agree with the *Prucka* court that the contract is some evidence of the value of an attorney's services, but as with other items of evidence, it is not controlling.

Illustrative of the factors to be considered by a trial court are those recited in *Serrano* v. *Priest, supra,* 20 Cal.3d 25. They include: the number of hours spent on the case, reasonable hourly compensation for the attorney, the novelty and difficulty of the questions involved, the skill displayed in presenting them, the extent to which the litigation precluded other employment by the attorney, and *the contingent nature of the fee award.* (*Id.*, at pp. 48-49.) While the provisions of a contract which create no liability for fees on the part of the client under certain circumstances may preclude an award of fees (where such fees are an item of costs), it does not follow that the fees awarded must necessarily equal the full amount of the client's obligation when the contract is enforceable.

■  The amount to be awarded as attorney's fees is left to the sound discretion of the trial court. The trial judge is in the best position to evaluate the services rendered by an attorney in his courtroom; his judgment will not be disturbed on review unless it is clearly wrong. (*Mandel* v. *Hodges* (1976) 54 Cal.App.3d 596, 624 [127 Cal.Rptr. 244, 90 A.L.R.3d 728].)

## III

■  Plaintiff by cross-appeal contends that the trial court erred in awarding only $50,000 in attorney's fees. Plaintiff argues that the evidence before the trial court justified a higher award, and that the trial court did not adequately explain the method by which fees were determined.

At the time of the ruling complained of, the trial court explained that it had reviewed all of the files in the court, former superior court proceedings, and the Court of Appeal file in determining the value of the attorney's services. The court recited the elaborate procedural history of this case. The court then observed:

"This work was done over a period of approximately 12 years. It was done under a contingency fee agreement . . . .

"Court, however, is looking at this, taking into account the time and effort that went into the work, the skill, the experience of Mr. Shalant, the results achieved, the fact that he was doing this work without any certainty of payment on a contingency fee basis.

"All of these things have been considered by the court, and, also, the fact that there was signicant [*sic*] development of law in the Supreme Court opinion is also considered.

"I've come to the conclusion, not only in evaluating each of these facets of work, but also a factor for work done before trial in the superior court, the pretrial work that was done, the pleadings.

"I've also taken into account the work done after the trial was concluded, work between trials even including the work that is being done at this time, which is also time being spent.

"All of these factors have been considered. I know Mr. Shalant has indicated that he has spent some 600 hours time on this case."

The trial court then awarded $50,000 on the following basis:

"THE COURT: Now, I have arrived at a total figure. I will give you the total figure. I then will go back and evaluate each step so that you will have the basis on which the court arrived at it's [sic] conclusion.

"The court has arrived at a figure for the work done by Mr. Shalant over the period since he's been involved in the case at $50,000. I will evaluate each of the items which have taken into account the factors that I have already indicated.

"For the original trial of four days, $7,500;

"The opening brief on appeal, dated September 17, 1976, $4,000;

"The reply brief, October 8, 1976 of 25 pages, $5,000;

"The petition for rehearing, nine pages on . . . March 29, 1977, $4,000;

"The petition for hearing, April 13, 1977 before the Supreme Court, 17 pages, $7,500.

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The retrial of three days in 1980, $5,000;

"The opening brief, dated April 27, 1981, 14 pages, $4,000.

"The reply brief of June 23, 1981, six pages, $3,000.

"I think you will find that these figures total $40,000. In addition, the court awards to Mr. Shalant for pretrial work before the first trial, the sum of $5,000 and a similar sum for work between the trial and the post trial work figure of $5,000, for a grand total of $50,000.

"This represents the court's evaluation of the work done. Even though the figure is less than that claimed by Mr. Shalant, I certainly don't demean the work done by him in any respect.

"It is a remarkable piece of faithful legal work over a period of many years, and I've taken the fact that he has had to await this point in calculating the figures.

"That has been included, as well as, as I've already said, the uncertainty of his perhaps ever being paid. It is a piece of work that he can be proud of. I've done my best to evaluate it objectively, taking into account the

court's own experience of some years and an evaluation of the professional work and merit that the court sees therein."

We reject cross-appellant's contention that the court did not adequately explain or justify its award, that the hourly rate is too low, or that the court abused its discretion in reaching the total award.

In *Melnyk* v. *Robledo* (1976) 64 Cal.App.3d 618 [134 Cal.Rptr. 602], appellant claimed attorney's fees of approximately $72,000, supported by an itemized statement of hours spent and the attorney's regular hourly rate. The court's award of $25,000 was sustained on appeal, although the trial court there had provided not nearly so elaborate or detailed an explanation of the basis for the ruling. The trial court in *Melnyk* explained that fees were based on the evidence, that a trial judge was not rigidly bound by affidavits and that he could take into consideration his own expertise as to what was a reasonable attorney's fee. The *Melnyk* court held (at pp. 623-624): "It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court, whose decision cannot be reversed in the absence of an abuse of discretion. [Citations.] The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case. [Citations.] We find no reason here to disturb the trial court's determination. [Citation.]"

The trial court is not bound by an attorney's evidence in support of his requested fee. The record here reflects that the trial court weighed and considered many factors in determining the value of the attorney's services. The award was not an abuse of discretion and will not be disturbed on appeal.

Plaintiff's request for sanctions against defendant for a frivolous appeal is denied. Plaintiff, as the prevailing party, is entitled to reasonable attorney's fees for services rendered on appeal. (*Roberts* v. *Brian* (1973) 30 Cal.App.3d 427, 430 [106 Cal.Rptr. 360]; *T.E.D. Bearing Co.* v. *Walter E. Heller & Co.* (1974) 38 Cal.App.3d 59, 64-65 [112 Cal.Rptr. 910].)

The judgment is affirmed. Plaintiff is awarded costs on appeal including attorney's fees in the amount of $7,500.

Kingsley, J., and Saeta, J.,* concurred.

A petition for a rehearing was denied February 23, 1984.

*Assigned by the Chairperson of the Judicial Council.