HOWARD T. SCHNEEKLOTH ET AL., APPELLANTS, V. COUNTY OF SARPY, APPELLEE.

335 N.W.2d 296

Filed June 17, 1983. No. 82-104.

John E. Rice, for appellants.

Patrick Kelly, County Attorney, for appellee.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and COLWELL, D.J., Retired.

McCOWN, J.

This is a condemnation proceeding in which the jury verdict for the total damages sustained by the condemnees was $111,151.50. Judgment was entered in that amount and the condemnees' request for allowance of attorney fees and costs was denied.

On March 4, 1980, Sarpy County, as condemnor, filed a condemnation proceeding in the county court to acquire lands for the construction of a road across the condemnees' property. The county sought fee title to the right-of-way and temporary construction easements.

Appraisers were duly appointed, viewed the property, heard the testimony of all interested parties, and on April 11, 1980, filed their return, assessing the condemnees' damages resulting from the taking at $108,750, which amount was deposited in the county court by the condemnor.

On May 8, 1980, the condemnees filed a notice of appeal from the award of the appraisers on the ground that the damages were insufficient.

On June 17, 1980, the condemnor and the condemnees entered into a stipulation which recited in part that as part of the condemnation proceedings the condemnor was required to remove an earthen dam embankment and drain the pond, and that the removal required an engineering design to properly drain the water and replace the dam structure. Such design and construction was to be at the cost of the condemnor. The parties agreed that it would be in the interests of each to allow the condemnees to design and construct the new dam structure so that the entire structure would be on their land. The con-

demnor agreed to pay condemnees the sum of $15,000 as a complete and total allowance for the construction of the replacement dam, which dam was to be designed by and meet the requirements of the Soil Conservation Service. The stipulation then provided that with the $15,000 allowance the condemnees would be completely responsible for the construction without further recourse to the condemnor, and that the stipulation was "without prejudice to the remaining issues involved in the condemnation proceedings, and shall be conclusive only as to the dam replacement." The replacement dam was built by the condemnees and the condemnor paid the agreed amount of $15,000.

On August 25, 1980, the condemnees filed their petition on appeal in the District Court, alleging that the sum assessed by the appraisers was grossly inadequate. Trial of the appeal was had before a jury which returned its verdict on October 27, 1981, finding the total damages sustained by the condemnees to be $111,151.50.

Meanwhile, the stipulation and evidence of the payment of the $15,000 had been filed in the condemnation proceedings, and on November 30, 1981, the condemnees moved the District Court to enter final judgment finding that the total amount due the condemnees as compensation for the taking and damaging of the property was $126,151.50, constituting the sum of the jury verdict plus the $15,000 amount paid under the stipulation.

On December 11, 1981, the condemnor filed its motion to enter final judgment in the amount of the jury verdict, and to deny the condemnees attorney fees and expert witness fees. On January 12, 1982, the District Court found generally in favor of the condemnor county and entered final judgment in favor of the condemnees in the amount of $111,151.50, the amount of the jury verdict, and denied the condemnees' request for allowance of attorney fees and costs.

The condemnees filed a motion for new trial and both parties filed a motion requesting the court to determine the amount of interest owing on the judgment. An evidentiary hearing was held on the motions on February 3, 1982. At the evidentiary hearing the parties reached agreement on the interest issue and that issue was removed. The District Court denied the motion for new trial and the condemnees have appealed.

The basic issue on this appeal is whether the $15,000 paid by the condemnor to the condemnees for the construction of the replacement dam must be added to the jury's verdict to determine the amount of the final judgment to be entered in this proceeding. The issue involves only the allowance of attorney and expert witness fees under the provisions of Neb. Rev. Stat. § 76-720 (Reissue 1981). That statute provides in part: "If an appeal is taken from the award of the appraisers by the condemnee and the amount of the final judgment is greater by fifteen per cent than the amount of the award . . . the court may in its discretion award to the condemnee a reasonable sum for the fees of his or her attorney and for fees necessarily incurred for not more than two expert witnesses."

In the case at bar there is no contention that the jury was improperly instructed, nor that its verdict was invalid for any reason. Neither is there any evidence that the award of the appraisers did not include all elements of damage resulting from the taking. If the $15,000 stipulated payment is added to the jury verdict for purposes of determining a final judgment amount, but not to the award of the appraisers, the final judgment would be 15 percent greater than the award of the appraisers and the condemnees would be entitled to recover reasonable attorney and witness fees. If the $15,000 is added to both the award of the appraisers and the jury verdict, or if the $15,000 is not added to either of them, the amount of the final judgment is not greater by

15 percent and the condemnees are not entitled to attorney or witness fees.

Some additional facts are appropriate. The record indicates that the right-of-way being condemned here crossed the pond on the condemnees' land at a point above the existing dam. The original design plan of construction was that the existing dam would be removed and the pond area drained. The new roadway was to be constructed so that the roadway would create a replacement dam and pond, and a riser was to be installed at the dam location and the surrounding land area cleared, all at the cost of the condemnor. This was the design plan of construction that was presented to the appraisers.

Testimony of one of the original appraisers at the hearing on the motion for new trial indicates that in making their award the appraisers did not award anything for the loss of the existing dam, presumably because they regarded the relocated dam of the roadway as a replacement. He also testified that the award of the appraisers included all the damages suffered by the condemnees by reason of the taking, including the loss of the land, the severance damages, and any other damage.

Following the award of the appraisers it is apparent that both parties agreed that the plan of construction should be changed, as detailed by the stipulation. Instead of the new roadbed being constructed to serve as a dam as well as a roadway at the cost of the condemnor, the revised construction plan placed the location of the dam at the edge of the right-of-way and provided that the condemnees would construct the replacement dam, rather than the condemnor. The agreed-upon amount of $15,000 was the total allowance to the condemnees for the construction of the relocated replacement dam. There is no evidence that the change in construction design and relocation of the replacement dam would either increase or decrease the total damages suffered by the condemnees as a result of the taking.

The evidence is clear that all parties entered into the stipulation agreement openly, voluntarily, and in good faith. There was no concealment or misrepresentation, and all parties fully performed and carried out their obligations under the stipulation.

In the case at bar there can be no question that the award of the appraisers was $108,750, and the verdict of the jury and the final judgment thereon was $111,151.50. In the specific language of § 76-720 the final judgment is not greater by 15 percent than the amount of the award.

The condemnees urge that we look behind the jury verdict and the judgment on it and determine that the jury did not include any element of damage resulting from the relocated replacement dam. We decline to do so.

Under present statutes no record is kept of the proceedings before the board of appraisers, and in the present case no bill of exceptions has been filed showing the evidence presented to the jury in the District Court. The record indicates that the award of the appraisers included all damages suffered by the condemnees by reason of the taking, and there is literally no evidence that the verdict of the jury did not include all damages as well.

The District Court specifically found that if the condemnees' motion to include the $15,000 stipulated sum as additional damages was meritorious, then that amount should be added to the county court appraisers' award and not to the District Court verdict. If the $15,000 cost of relocating and constructing the replacement dam was not considered by either the board of appraisers or by the jury, and that amount was added to both, or to neither, the final judgment would still be less than 15 percent more than the award of the appraisers.

In a condemnation proceeding, if an appeal is taken from the award of the appraisers by the condemnee and the amount of the final judgment in the District Court is less than 15 percent more than the

amount of the award of the appraisers, the condemnee is not entitled to an award for attorney and expert witness fees. § 76-720.

In a condemnation proceeding, in the absence of evidence to the contrary, it will be presumed that the amount of an award of damages by appraisers and the amount of the verdict of the jury for damages on which final judgment was entered were each duly and properly determined according to law.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.

WHITE, J., dissenting.

To acquire the necessary land and right-of-way for their improvements, Sarpy County paid appellants $126,151.50. The appraisers had awarded $108,750. It is obvious that appellants received an increase in the appraisers' award of more than 15 percent, thereby triggering the attorney fee provision of Neb. Rev. Stat. § 76-720 (Reissue 1981). To interpret the words "final judgment" to exclude amounts secured by partial voluntary settlements after the appraisers' award is unrealistic and unwarranted.

KRIVOSHA, C.J., and CAPORALE, J., join in this dissent.